HERRICK, FEINSTEIN LLP
Stephen B. Selbst
Steven B. Smith
George V. Utlik
Silvia Stockman
Rachel Ginzburg (*Pro Hac Vice to be Submitted*)
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
sselbst@herrick.com
ssmith@herrick.com
gutlik@herrick.com
sstockman@herrick.com
rginzburg@herrick.com

*Proposed Counsel for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| AMPLE HILLS HOLDINGS, INC., *et al*., | Case No. 20-41559 (___) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' EMERGENCY MOTION, PURSUANT TO
11 U.S.C. §§ 105, 361, 362, 363, AND 1107, FOR ENTRY OF
INTERIM AND FINAL ORDERS AUTHORIZING DEBTORS TO UTILIZE
CASH COLLATERAL, SCHEDULING A FINAL HEARING PURSUANT
TO BANKRUPTCY RULE 4001(b); AND GRANTING RELATED RELIEF**

Ample Hills Holdings, Inc. and its affiliated debtors and debtors in possession

(collectively, the "Debtors" and each separately a "Debtor"), by and through their undersigned

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Ample Hills Astoria, LLC (3001); Ample Hills Aventura, LLC (4022); Ample Hills Chelsea, LLC (1803); Ample Hills Creamery, Inc. (9650); Ample Hills Essex Street Market, LLC (8522); Ample Hills Fireboat House, LLC (6699); Ample Hills Gowanus, LLC (2450); Ample Hills Highline, LLC (0197); Ample Hills Jersey City, LLC (7428); Ample Hills LBV, LLC (6652); Ample Hills Manufacturing, LLC (5506); Ample Hills PPW, LLC (2968); Ample Hills Red Hook, LLC (4518); Ample Hills Vanderbilt, LLC (7255); Ample Hills Wholesale Online, LLC (3008).

proposed counsel, respectfully submit this motion (the "<u>Motion</u>"), pursuant to sections 105(a), 361, 362, 363(a), 363(c)(2)(3), 363(e), and 1107(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001(b), and 9014 of the Federal Rules of Bankruptcy Procedures (the "<u>Bankruptcy Rules</u>"), and Rule 4001-5 of the Local Rules (the "<u>Local Rules</u>") of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of New York (the "<u>Bankruptcy Court</u>") for the entry of interim (the "<u>Interim Order</u>") and final orders (the "<u>Final Order</u>" and, together with the Interim Order, the "<u>Cash Collateral Orders</u>"), *inter alia*, (i) authorizing the Debtors to utilize cash collateral, and (ii) scheduling a final hearing pursuant to Bankruptcy Rules 4001(b).  In support of the Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory predicates for the relief sought herein are sections 105(a), 361, 362, 363(a), 363(c)(2)(3), 363(e), and 1107(a) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and 9014, and Local Rule 4001-5.

### BACKGROUND

3.      On the date hereof (the "<u>Petition Date</u>"), the Debtors commenced these cases by each filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

4.      The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No request has been made for the appointment of a trustee or examiner, and a creditors' committee has not been appointed by the Office of the United States Trustee for the Eastern District of New York (the "U.S. Trustee").

6.      The Bankruptcy Court and interested parties are respectfully referred to (i) the *Declaration of Phillip Brian David Smith Pursuant to Local Rule 1007-4 in Support of the First Day Motions,* dated March 15, 2020 (the "Smith Declaration") and (ii) the *Declaration of Dan Scouler Pursuant to Local Rule 1007-2 in Support of the First Day Motions,* dated March 15, 2020 (the "Scouler Declaration" and, together with the Smith Declaration, the "First Day Declarations")[2] for a detailed discussion regarding the Debtors, their operations, and the events leading to the filing of these chapter 11 cases (the "Chapter 11 Cases").

7.      The Debtors are a widely-known ice cream manufacturer and distributor in the United States, with approximately ten (10) current retail locations, a manufacturing plant, and an online wholesale supplier.  In connection with the Chapter 11 Cases, the Debtors seek to consummate the sale of all or substantially all of their assets (the "Sale") pursuant to the *Debtors' Motion Seeking Entry of an Order (I) (A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Selection of a Stalking Hose Bidder, (C) Approving Bid Protections, (D) Scheduling Auctions and Hearings to Consider Such Sale of Assets, (E) Approving Assumption and Assignment Procedures Related to Such Sale, and (F) Approving the Form and Manner of Related Notice; and (II) (A) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Interest, (B) Authorizing and Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Such Sale, and (C) Granting Related Relief* (the "Sale Motion"), filed

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declarations.

contemporaneously herewith or promptly following the date hereof, and as may be prescribed by the Bankruptcy Court in the Bidding Procedures Order (as defined in the Sale Motion).

## A.    **Secured Debt**

8.      The Debtors are currently indebted to Flushing Bank ("<u>Flushing</u>" or "<u>Lender</u>") in the total amount of approximately $3.5 million in connection with various prepetition loans (collectively, "<u>Secured Loans</u>").  As collateral security for such Secured Loans, Flushing holds valid, perfected, and enforceable liens and security interests in all of the Debtors' assets, including, among other things, all accounts receivables and proceeds and products therefrom (collectively, the "<u>Prepetition Collateral</u>") and any and all of the Debtors' "cash collateral," as the term is defined in section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>").  The Debtors believe that their Cash Collateral wherever located on the Petition Date, including cash proceeds from collection of the Debtors' prepetition accounts receivable, represents either proceeds of the Secured Loans or other financial accommodations from the Lender to the Debtors or proceeds of the Prepetition Collateral.

9.      Before the Petition Date, the Debtors and Flushing had discussions and negotiations regarding the Debtor's use of Cash Collateral pursuant to the terms of the Interim Order, which is subject to the Court's approval.  Flushing has not consented to the Debtors' use of the Cash Collateral under the terms of the Interim Order.

## B.    **The Proposed Sale**

10.     The Debtors have determined that an expeditious sale of all or substantially all of the Debtors' assets is necessary to preserve and maximize value and that a reorganization is not a viable option due to the Debtors' liquidity constraints.

11.     Before the Petition Date, the Debtors engaged in discussions with multiple prospective purchasers in an effort to secured debtor in possession financing and/or a stalking horse purchaser.  The Debtors determined, however, that conducting a sale process pursuant to the Bidding Procedures Order would maximize the value of the Debtors' assets for the benefit of their creditors.

12.     The Debtors believe they have sufficient funds to continue to operate their businesses for approximately eight (8) weeks in order to get to the Sale Auction.  However, the Debtors further believe that the competitive bidding process for the Sale, as contemplated in the Sale Motion, must take place on an expedited schedule to ensure that value is preserved and maximized.

C.     **Compliance with Local Rule 4001-5**

13.     Local Rule 4001-5(a) requires that certain provisions contained in the Interim Order be highlighted, and that the Debtors must provide justification for the inclusion of such highlighted provision(s).

(i)     Local Rule 4001-5(a)(i): This Motion and the Cash Collateral Orders set forth the amount of cash collateral the Debtors seek permission to use.

(ii)    Local Rule 4001-5(a)(ii): This rule is not applicable.

(iii)   Local Rule 4001-5(a)(iii): This rule is not applicable.

(iv)    Local Rule 4001-5(a)(iv): This Motion and the Cash Collateral Orders contains provisions regarding the Lender's existing liens and granting adequate protection, additional or replacement liens to the Lender.

(v)     Local Rule 4001-5(a)(v): This rule is not applicable

(vi)    Local Rule 4001-5(a)(vi): This rule is not applicable

(vii)   Local Rule 4001-5(a)(vii): This rule is not applicable

(viii)  Local Rule 4001-5(a)(viii): This rule is not applicable

(ix)     Local Rule 4001-5(a)(ix): This rule is not applicable

(x)      Local Rule 4001-5(a)(x): This rule is not applicable

(xi)     Local Rule 4001-5(a)(xi): This rule is not applicable

(xii)    Local Rule 4001-5(a)(xii): This rule is not applicable

(xiii)   Local Rule 4001-5(a)(xiv): This rule is not applicable

(xiv)    Local Rule 4001-5(a)(xv): This rule is not applicable

(xv)     Local Rule 4001-5(a)(xvi): This rule is not applicable

(xvi)    Local Rule 4001-5(g):  The Debtors believe that the budget (the "Budget") attached hereto as Exhibit A will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget.

(xvii)   Local Rule 4001-5(h): Notice of a preliminary or final hearing shall be given to (1) the U.S. Trustee, (2) the Debtors' 20 largest unsecured creditors or the creditors' committee if one has been appointed, the persons required by Bankruptcy Rules 4001(b)(3) and 4001(c)(3), as the case may be, and any other persons whose interests may be directly affected by the outcome of the Cash Collateral Motion or any provision of the Cash Collateral Orders.

## **RELIEF REQUESTED AND BASIS THEREFOR**

14.    The Motion requests, pursuant to sections 105(a), 361, 362, 363(a), 363(c)(2)(3), 363(e), and 1107(a) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and 9014, and Local Rule 4001-5, (i) entry of the proposed Interim Order, substantially in the form annexed hereto as Exhibit B, authorizing the Debtors use of the Lender's Cash Collateral and the granting of adequate protection; and (iii) giving notice of the final hearing on the motion (the "Final Hearing").

15.    As set forth in the First Day Declarations, the Debtors use of the Lender's Cash Collateral, in accordance with the Budget, will enable the Debtors to continue to operate their

Businesses in the ordinary course and in an orderly and reasonable manner to preserve and enhance the value of their estates for the benefit of all parties-in-interest. More specifically, the Debtors' next scheduled payroll payment is Tuesday, March 17, 2020. Without this Court's authorization to use Cash Collateral, the Debtors will be unable to satisfy the administrative expenses attendant with the reorganization of their businesses under chapter 11.

16.     Additionally, the availability of Cash Collateral will also provide confidence to the Debtors' creditors and counterparties that will enable and encourage them to continue their relationships with the Debtors.

17.     Finally, the availability of Cash Collateral will likely be viewed favorably by the Debtors' employees, dealers and vendors, thereby promoting consummation of the Sale pursuant to and in accordance with the Sale Motion and, in turn, potentially enabling the Debtors to provide a distribution to the Debtor's remaining creditors thereafter. Accordingly, the timely approval of the relief requested herein is imperative.

A.     **The Debtors Should Be Authorized to Use Cash Collateral**

18.     A debtor-in-possession may be authorized to use cash collateral in the ordinary course of its business operations under Bankruptcy Code §§ 363(c) and 1107(a).

19.     Courts repeatedly have recognized that use of cash collateral is appropriate where necessary to preserve a debtor's ability to reorganize and thus maximize the value of an estate for all interested parties. See In re Realty Southwest Assoc., 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992); H.R. Rep. No. 595, 95th Cong., 1st Sess. 344 (1977); 3 Collier on Bankruptcy 363.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. Rev. 2006); see also In re Dynaco, 162 B.R. 389, 396; In re Stein, 19 B.R. 458 (Bankr. E.D. Pa. 1982). Bankruptcy Rule 4001(b) governs authorization for utilizing cash collateral and provides that the court may permit the debtor in

possession to use cash collateral before a final hearing to the extent necessary to avoid immediate and irreparable harm. After a final hearing held on at least fifteen days' notice, the court may grant the authority to use cash collateral on a permanent basis and other permanent relief requested herein.

20.     A chapter 11 debtor may not use cash collateral unless "(A) each entity that has an interest in such collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

21.     The Debtors require the use of Cash Collateral to fund their operations. In the absence of the continued authorization to use Cash Collateral, the Debtors' ability to continue operating in the ordinary course of business will be jeopardized, causing immediate and irreparable harm to the Debtors' estates, their creditors, employees, and all other stakeholders by virtue of the loss of significant going-concern value. Thus, the Debtors' continued use of Cash Collateral is essential to enable the Debtors to meet the obligations of their ordinary operating costs and expenses during the pendency of the Chapter 11 Cases. Among other things, the continued use of Cash Collateral will enable the Debtors to maintain business relationships with their vendors and customers, pay their employees, and satisfy other ordinary operational costs that are essential to preserve their bankruptcy estates' value by continuing to operate their business in the ordinary course.

22.     More specifically, the need for the Debtors' immediate use of the Cash Collateral and for the relief required in the Interim Order is best illustrated by the Debtors' expenditures forecast in the Budget. The Budget demonstrates that during the initial four (4) week period after the filing of these Chapter 11 Cases (the "Interim Period"), the Debtors anticipate that they will collect approximately $527,800 in cash. The Budget also sets forth the weekly expenditures

required by the Debtors and projects cash disbursements totaling $644,800 during the Interim Period.  The bulk of these disbursements represent payments related to payroll and other employee-related obligations, utilities, the purchase of inventory and supplies, and all other expenses necessary for the Debtors' continued post-petition operations.  The Budget demonstrates the Debtors' need for use of Cash Collateral during the Interim Period.  The Debtors believe that they can operate their business during the Interim Period using Cash Collateral alone.  Without the use of Cash Collateral, however, the Debtors will be unable to support their operations and meet their obligations under chapter 11 of the Bankruptcy Code and will face a palpable risk of severe disruption to their business and irreparable harm to their assets and the value of the Lender's Prepetition Collateral.

23.    Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).  Therefore, unless the Lender consents, the use of Cash Collateral is conditioned upon the adequate protection of the creditor's interest.  *See* 11 U.S.C. §§ 363(c)(2), (e).

24.    The Bankruptcy Code does not explicitly define "adequate protection." Permissible forms of adequate protection include periodic cash payments, additional liens, replacement liens, and other forms of relief.  *See* 11 U.S.C. § 361.  The third option is regarded as a "catch-all" provision, affording bankruptcy courts discretion, on a case-by-case basis, to determine what level of protection is appropriate to provide a secured lender.  <u>See</u> <u>In re Swedeland Dev. Group, Inc.</u>, 16 F.3d 552, 564 (3d Cir. 1994); <u>In re Becker Indus. Corp.</u>. 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

25.    The purpose of adequate protection is to protect a secured creditor from diminution in the value of its property interest in its collateral during the period of use, sale, or lease. See 495 Cen. Park, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal of adequate protection is to safeguard the secured creditor in the value of its interest [during the chapter 11 case]."); In re Becker Indus. Corp.. 58 B.R. at 736; In re Hubbard Power & Light, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996); In re Kain, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); see also Delbridge v. Production Credit Assoc. and Fed. Land Bank, 104 B.R. 824, 827-28 (E.D. Mich. 1989); In re Ledgemere Land Corp., 116 B.R. 338, 343 (Bankr. D. Mass. 1990). The appropriate form of adequate protection must be determined on a case-by-case basis. See In re O'Connor, 808 F/2d 1393, 1396 (10th Cir. 1987); In re Martin, 761 F.2d 472, 474 (8th Cir. 1985). Accordingly, this Court has discretion to determine what level of protection is appropriate to provide the Lender. See Becker Indus., 58 B.R. at 736; In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994).

26.    As set forth in the Interim Order, the Lender will receive adequate protection of its prepetition interests in the Cash Collateral in the form of (a) preservation or enhancement of its collateral's value through the Debtors' ability to continue operating and maintaining their businesses and to generate a continuous income stream, and (b) additional or replacement liens (collectively, the "Adequate Protection"). See In re Megan-Racine Assocs. Inc., 202 B.R. 660, 663 (Bankr. N.D.N.Y. 1996) ("As long as there was a continuous income stream being generated by the Debtor, the fact that the Debtor consumed a portion of those monies to operate and maintain the Facility each month did not diminish the value of the FDIC's interest in the Collateral."); In re Mullen, 172 B.R. 473, 477 (Bankr. D. Mass. 1994) ("A receivable . . . lender does not lack adequate protection, even if it is undersecured, so long as the value of the stream of

future accounts or inventory and their proceeds is not declining." (citations omitted)); <u>In re 499 W. Warren St. Assocs., Ltd. P'ship</u>, 142 B.R. 53, 57 (Bankr. N.D.N.Y. 1992) ("A secured creditor's interest in the collateral itself is adequately protected when a portion of the rents are applied to its operation and maintenance." (citing <u>In re Pine Lake Village Apartment Co.</u>, 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982)); <u>see also</u> <u>In re Pine Lake Village Apartment Co.</u>, 19 B.R. 826 (Bankr. S.D.N.Y. 1982) (noting that secured interest may be adequately protected by maintenance of the status quo, notwithstanding debtor's lack of equity in the property).  There is no need for any additional adequate protection where continued post-petition operation of the Debtors' businesses poses no serious danger of decline. *See In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716-17 (Bankr. D. Del. 1996) (finding secured creditor is adequately protected for the use of its cash collateral where the debtor operates profitably post-petition); <u>In re Newark Airport/Hotel Ltd. P'ship</u>, 156 B.R. 444, 450 (Bankr. D.N.J. 1993), <u>aff'd sub nom. FGH Realty Credit Corp. v. Newark Airport/Hotel Ltd. P'ship</u>, 155 B.R. 93 (D.N.J. 1993) (holding secured creditor's interest in hotel was adequately protected and no adequate protection payments were necessary given the hotel's increased occupancy, the improving real estate market, and competency of current management).

27.    Under the Interim Order, the Lender will receive, as Adequate Protection for the diminution in the value of the Cash Collateral caused by the Debtors' use, valid, binding, enforceable, and automatically perfected replacement liens on and security interests in (collectively, "<u>Liens</u>," and as so granted to the Lender, the "<u>Replacement Lien</u>"), to the extent of such diminishment, all of the Debtors' presently owned or hereafter acquired property and assets, including their accounts receivable and inventory (collectively, to the extent acquired after the Petition Date, the "<u>Post-Petition Collateral</u>" and together with the Prepetition Collateral and the

Cash Collateral, the "<u>Collateral</u>") to the same extent the Lender's existing liens on the Debtors' assets are valid and perfected, subject to the carve-out for: (a) any unpaid fees of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930; (b) any unpaid fees and expenses of professionals of the Debtors and an official committee of unsecured creditors (if appointed) retained by an order of the Court pursuant to section 327, 328 or 363 of the Bankruptcy Code (the "<u>Professionals</u>"), to the extent such fees and expenses are (1) allowed by the Court under sections 330, 331, or 363 of the Bankruptcy Code, and (2) not otherwise paid after exhaustion of retainers or any professional expense escrow account established by the Debtors and not otherwise paid during these Chapter 11 Cases; and (c) any reasonable fees and expenses of any chapter 7 trustee that may be appointed and any of such chapter 7 trustee's professionals (collectively, the "<u>Carve Out</u>").  For the avoidance of doubt, claims or causes of action arising under sections 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code and the proceeds thereof ("<u>Avoidance Actions</u>") shall not constitute the Collateral of the Lender.

28.     The Debtors respectfully submit that the Adequate Protection will sufficiently protect the Lender's interests in the Cash Collateral from any diminution in value and therefore should be approved.

**B.      <u>Interim Approval Should Be Granted</u>**

29.     Bankruptcy Rules 4001(b) provide that a final hearing on a motion to authorize use of cash collateral may not be commenced earlier than fourteen (14) days after the service of such motion.  <u>See</u> Fed. R. Bankr. P. 4001(b). Upon request, however, the Bankruptcy Court may conduct a preliminary expedited hearing on the motion to authorize use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.  <u>See</u> Fed. R. Bankr. P. 4001(b).

30.     Pursuant to Bankruptcy Rule 4001(b), the Debtors respectfully request that the Bankruptcy Court conduct an expedited preliminary hearing on this Motion and (i) authorize the Debtors' use of the Lender's Cash Collateral on an interim basis, pending entry of the Final Order, in order to (a) maintain and finance the ongoing operations of the Debtors; (b) fund the administration of the Chapter 11 Cases; and (c) avoid immediate and irreparable harm and prejudice to the Debtors' estates, business operations and all parties-in-interest, and (ii) schedule the Final Hearing.

31.     The Debtors have an urgent and immediate need for cash to continue to operate. Currently, the Debtors do not have sufficient funds with which to operate their businesses on an ongoing basis.  Absent authorization from this Court to use Cash Collateral, as requested, on an interim basis pending the Final Hearing, the Debtors and their estates will be immediately and irreparably harmed.  The availability of Cash Collateral will provide necessary assurance of the Debtors' ability to meet their near-term obligations.  Failure to meet these obligations and to provide these assurances likely would have a long-term negative impact on the value of the Debtor's businesses, to the detriment of all parties-in-interest.  Accordingly, the interim relief requested is critical to preserving and maintaining the going concern value of the Debtors and facilitating their reorganization efforts.

32.     For the foregoing reasons, and based upon the record, including testimony that the Court might request, it is respectfully submitted that the grounds for entry of the Interim Order exist and the relief requested is necessary.

**<u>NOTICE</u>**

33.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Eastern District of New York, Brooklyn Division, Attn: Nazar Khodorovsky, Esq. and Reema Lateef, Esq., 201 Varick Street, Suite 1006, New York, New York 10014; (ii)

the Lender, Flushing Bank, 99 Park Ave., Ste 820, New York NY 10016, and its counsel, Certilman Balin Adler & Hyman LLP, Attn: Richard J. McCord, Esq., 90 Merrick Avenue, East Meadow, New York 11554; (iii) U.S. Small Business Administration (SBA), New York District Office, 26 Federal Plaza, Suite 31-00, New York, New York 10278; (iv) SC Corporation System, P.O. Box 29071, Glendale, CA 91209-9071; (v) Walt Disney Parks and Resorts U.S., Inc., 1375 East Buena Vista Drive, Lake Buena Vista, LF 32830; (vi) DLL Finance LLC, P.O. Box 2000, Johnston, IA 50131; (vii) any party whose interests are directly affected by the Motion; (viii) those persons who have formally appeared and requested notice and service in these Chapter 11 Cases pursuant to Bankruptcy Rules 2002 and 3017; (ix) the consolidated list of 30 largest unsecured creditors of the Debtors; (x) all other parties required to receive service under Local Rule 2002-2 and the Guidelines for First Day Motions adopted by the Board of Judges for the United States Bankruptcy Court for the Eastern District of New York.  Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtors respectfully submit that no further notice of this Motion is required.

## NO PRIOR REQUEST

34.    No prior request for the relief sought herein has been made to this or any other court.

## **CONCLUSION**

**WHEREFORE**, the Debtors respectfully request entry of the Interim Order and, following the Final Hearing, entry of a Final Order, and such further relief as this Court may deem just and proper.

Dated:  March 15, 2020
       New York, New York

Respectfully submitted,

HERRICK, FEINSTEIN LLP

By: /s/   *Stephen B. Selbst*
Stephen B. Selbst
Steven B. Smith
George V. Utlik
Silvia Stockman
Rachel Ginzburg (*Pro Hac Vice to be Submitted*)
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
sselbst@herrick.com
ssmith@herrick.com
gutlik@herrick.com
sstockman@herrick.com
rginzburg@herrick.com

*Proposed Counsel for the Debtors and Debtors in Possession*

## EXHIBIT A

**(Budget)**

AMPLE HILLS
## CONSOLIDATED

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | | total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3/16/2020 | 3/23/2020 | 3/30/2020 | 4/6/2020 | 4/13/2020 | 4/20/2020 | 4/27/2020 | 5/4/2020 | 5/11/2020 | | |
| | 3/22/2020 | 3/29/2020 | 4/5/2020 | 4/12/2020 | 4/19/2020 | 4/26/2020 | 5/3/2020 | 5/10/2020 | 5/17/2020 | | total |
| **Sales** | $110,151 | $138,771 | $127,985 | $150,891 | $145,388 | $143,109 | $146,742 | $150,484 | $154,339 | | $1,267,858 |
| | | | | | | | | | | | -- |
| Ice Cream | -- | -- | $10,000 | -- | $15,000 | -- | $15,000 | $15,000 | $15,000 | | $70,000 |
| Beverages | -- | -- | -- | -- | -- | -- | -- | -- | -- | | -- |
| Other | -- | -- | -- | -- | -- | -- | -- | -- | -- | | -- |
| Paper | -- | -- | -- | -- | -- | -- | -- | -- | -- | | -- |
| Drayage | -- | -- | -- | -- | -- | -- | -- | -- | -- | | -- |
| Gowanus Factory | -- | -- | -- | -- | -- | -- | -- | -- | -- | | -- |
| **COGS** | -- | -- | $10,000 | -- | $15,000 | -- | $15,000 | $15,000 | $15,000 | | $70,000 |
| *% of Sales* | *0.0%* | *0.0%* | *7.8%* | *0.0%* | *10.3%* | *0.0%* | *10.2%* | *10.0%* | *9.7%* | | *5.5%* |
| | | | | | | | | | | | |
| Management | $2,596 | $3,779 | $3,779 | $3,779 | $3,779 | $3,779 | $3,779 | $3,779 | $3,779 | | 32,828 |
| Crew | $59,273 | $59,273 | $63,031 | $63,031 | $63,031 | $63,031 | $68,742 | $68,742 | $68,742 | | $576,895 |
| Payroll Taxes | $5,568 | $5,675 | $6,013 | $6,013 | $6,013 | $6,013 | $6,527 | $6,527 | $6,527 | | 54,875 |
| Benefits, Insurance, Fees, Other | $6,187 | $6,305 | $6,681 | $6,681 | $6,681 | $6,681 | $7,252 | $7,252 | $7,252 | | 60,972 |
| **Labor** | $73,624 | $75,032 | $79,503 | $79,503 | $79,503 | $79,503 | $86,300 | $86,300 | $86,300 | | $725,570 |
| *% of Sales* | *66.8%* | *54.1%* | *62.1%* | *52.7%* | *54.7%* | *55.6%* | *58.8%* | *57.3%* | *55.9%* | | *57.2%* |
| | | | | | | | | | | | |
| **Prime Margin** | $36,527 | $63,739 | $38,482 | $71,387 | $50,884 | $63,605 | $45,442 | $49,184 | $53,038 | | $472,288 |
| *% Margin* | *33.2%* | *45.9%* | *30.1%* | *47.3%* | *35.0%* | *44.4%* | *31.0%* | *32.7%* | *34.4%* | | *37.3%* |
| | | | | | | | | | | | |
| Rent | $60,139 | -- | $116,520 | -- | -- | -- | $63,898 | -- | -- | | 240,557 |
| Storage | -- | -- | -- | -- | -- | -- | -- | -- | -- | | -- |
| CAM | -- | -- | -- | -- | -- | -- | -- | -- | -- | | -- |
| RET | -- | -- | -- | -- | -- | -- | -- | -- | -- | | -- |
| Other | -- | -- | -- | -- | -- | -- | -- | -- | -- | | -- |
| **Occupancy** | $60,139 | -- | $116,520 | -- | -- | -- | $63,898 | -- | -- | | $240,557 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Telephone/Internet | -- | -- | $1,000 | -- | -- | -- | $1,000 | -- | -- | 2,000 |
| Electric | $750 | $750 | $10,750 | $1,000 | $1,000 | $1,000 | $11,000 | $1,000 | $1,000 | 28,250 |
| Water/Sewer | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| Utility Deposit | -- | -- | $15,000 | -- | -- | -- | -- | -- | -- | 15,000 |
| Smallwares/Paper Supplies | $5,700 | $5,700 | $5,700 | $5,700 | $5,700 | $5,700 | $5,700 | $5,700 | $5,700 | 51,300 |
| Cleaning Supplies | $810 | $810 | $810 | $810 | $810 | $810 | $810 | $810 | $810 | 7,290 |
| Office Supplies | $450 | $450 | $450 | $450 | $450 | $450 | $450 | $450 | $450 | 4,050 |
| Shop Décor + Art Supplies | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| Repairs & Maintenance | $1,260 | $1,255 | $1,260 | $1,335 | $1,260 | $1,255 | $1,260 | $1,360 | $1,360 | 11,605 |
| Service Contracts | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| Contract Cleaning | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | 900 |
| Exterminating | $50 | $50 | $1,050 | $50 | $50 | $50 | $1,050 | $50 | $50 | 2,450 |
| Software Services | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | 1,800 |
| POS | -- | -- | $2,500 | -- | -- | -- | $2,500 | -- | -- | 5,000 |
| Computer / IT | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | $50 | 450 |
| Uniforms | $100 | $100 | $1,100 | $100 | $100 | $100 | $1,100 | $100 | $100 | 2,900 |
| Freight | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | 900 |
| Marketing | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| Printing | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| Security | $100 | $100 | $1,100 | $100 | $100 | $100 | $1,100 | $100 | $100 | 2,900 |
| Travel | $270 | $270 | $270 | $270 | $270 | $270 | $270 | $270 | $270 | 2,430 |
| Licenses/Permits/Dues & Subscriptions | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| Taxes | $30,000 | -- | -- | -- | -- | $35,000 | -- | -- | -- | 65,000 |
| Banking Fees | -- | -- | $1,500 | -- | -- | -- | $1,500 | -- | -- | 3,000 |
| Sales-Related Fees | $496 | $639 | $585 | $699 | $672 | $661 | $679 | $697 | $717 | 5,844 |
| Credit Card Charges | $1,487 | $1,917 | $6,755 | $2,098 | $2,016 | $1,982 | $7,036 | $2,092 | $2,150 | 27,533 |
| Miscellaneous | -- | -- | $30,000 | -- | -- | -- | -- | -- | -- | 30,000 |
| Professional Fees (Testing) | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | 1,800 |
| US Trustee Fees | | | $4,875 | | | | | | | 4,875 |
| **Other Operating Expenses** | $42,123 | $12,690 | $85,355 | $13,263 | $13,078 | $48,027 | $36,105 | $13,280 | $13,357 | $277,277 |
| *% of Sales* | *38.2%* | *9.1%* | *66.7%* | *8.8%* | *9.0%* | *33.6%* | *24.6%* | *8.8%* | *8.7%* | *21.9%* |
| **SLEBITDA** | ($65,736) | $51,049 | ($163,393) | $58,124 | $37,807 | $15,578 | ($54,561) | $35,904 | $39,682 | ($45,546) |
| *% Margin* | *(59.7%)* | *36.8%* | *(127.7%)* | *38.5%* | *26.0%* | *10.9%* | *(37.2%)* | *23.9%* | *25.7%* | *(3.6%)* |

**Exhibit B**

**(Interim Order)**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| AMPLE HILLS HOLDINGS, INC., *et al.*, | Case No. 20-41559 (___) |
| Debtors.[3] | (Joint Administration Pending) |

### INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL

Upon the Motion (the "Motion")[4] of the Debtors, by their proposed counsel, Herrick, Feinstein LLP, seeking entry of (1) an Interim Order authorizing the Debtors, pursuant to sections 105(a), 361, 362, 363(a), 363(c)(2)(3), 363(e), and 1107(a) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and 9014, and Local Rule 4001-5, to utilize Cash Collateral, upon the terms and conditions set forth herein, pending a final hearing to be held before the Court on April __, 2020 at __:__ __.m. (the "Final Hearing") and (2) following the Final Hearing, a final cash collateral order permitting the use of Cash Collateral (the "Final Order"); an emergency hearing having been held and concluded before me on March __, 2020 to consider the entry of this order authorizing the Debtors' interim use of Cash Collateral (the "Interim Hearing"); and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best

---

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Ample Hills Astoria, LLC (3001); Ample Hills Aventura, LLC (4022); Ample Hills Chelsea, LLC (1803); Ample Hills Creamery, Inc. (9650); Ample Hills Essex Street Market, LLC (8522); Ample Hills Fireboat House, LLC (6699); Ample Hills Gowanus, LLC (2450); Ample Hills Highline, LLC (0197); Ample Hills Jersey City, LLC (7428); Ample Hills LBV, LLC (6652); Ample Hills Manufacturing, LLC (5506); Ample Hills PPW, LLC (2968); Ample Hills Red Hook, LLC (4518); Ample Hills Vanderbilt, LLC (7255); Ample Hills Wholesale Online, LLC (3008).

[4] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

interests of the Debtors, their estates, their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation having been had, and sufficient cause appearing therefore, and the Debtors having asserted for the purposes of this Interim Order that:[5]

1.      The Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on March 15, 2020 (the "Petition Date").

2.      The Debtors are currently indebted to the Lender in the approximate amount of $3.5 million (the "Prepetition Obligations") in connection with various prepetition loans made by the Lender pursuant to the loan documents between the parties.

3.      During the initial four (4) week period after the filing of these Chapter 11 Cases (the "Interim Period"), the estimated amount of payroll and employee benefits is approximately $307,600, inclusive of taxes.

4.      The Debtors estimate that the cash expenses for the Interim Period will be approximately $644,800 and that cash receipts will be approximately $527,800.

5.      The Lender has valid, perfected, and enforceable liens and security interests in the Debtors' assets, including all accounts receivables and proceeds and products therefrom (collectively, the "Prepetition Collateral").

NOW THEREFORE, upon the Motion, and the pleadings in these Chapter 11 Cases, and the record of the proceedings held before this Court with respect to the Motion, this Court finds as follows:

6.      As evidenced by the affidavit(s) of service filed on the docket in these jointly administered Chapter 11 Cases, the Debtors have given notice of the Interim Hearing to: (i) the

---

[5] Nothing asserted herein shall be used to prejudice or estop any party from subsequently contesting any of the factual assertions for any other purpose.

Office of the United States Trustee for the Eastern District of New York, Brooklyn Division, Attn: Nazar Khodorovsky, Esq. and Reema Lateef, Esq., 201 Varick Street, Suite 1006, New York, New York 10014; (ii) the Lender, Flushing Bank, 99 Park Ave., Ste 820, New York NY 10016, and its counsel, Certilman Balin Adler & Hyman LLP, Attn: Richard J. McCord, Esq., 90 Merrick Avenue, East Meadow, New York 11554; (iii) U.S. Small Business Administration (SBA), New York District Office, 26 Federal Plaza, Suite 31-00, New York, New York 10278; (iv) SC Corporation System, P.O. Box 29071, Glendale, CA 91209-9071; (v) Walt Disney Parks and Resorts U.S., Inc., 1375 East Buena Vista Drive, Lake Buena Vista, LF <u>32830</u>; (vi) DLL Finance LLC, P.O. Box 2000, Johnston, IA 50131; (vii) any party whose interests are directly affected by the Motion; (viii) those persons who have formally appeared and requested notice and service in these Chapter 11 Cases pursuant to Bankruptcy Rules 2002 and 3017; (ix) the consolidated list of 30 largest unsecured creditors of the Debtors; (x) all other parties required to receive service under Local Rule 2002-2 and the Guidelines for First Day Motions adopted by the Board of Judges for the United States Bankruptcy Court for the Eastern District of New York (collectively, the "<u>Notice Parties</u>") by overnight mail, facsimile transmission and/or electronic mail on March 16, 2020 and that such notice represents sufficient and adequate notice of the Motion and the Interim Hearing pursuant to Bankruptcy Rules 4001(b) and 9014 and no further notice of, or hearing on the interim relief sought in the Motion is necessary or required.

7.      Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§157(b)(2)(A), (K), (M) and (O).

8.      This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

9.      No committee, examiner, or trustee has yet been appointed in these Chapter 11 Cases.

10.     Good, adequate and sufficient cause has been demonstrated to justify the granting of the interim relief requested herein.

IT IS HEREBY ORDERED AS FOLLOWS:

11.     The Debtors are hereby authorized to use Cash Collateral in accordance with and to the extent set forth in this Interim Order as shown in the Budget annexed hereto as <u>Exhibit "1"</u> (the "<u>Interim Budget</u>") on an interim basis through and until April __, 2020, at 5:00 p.m. (New York City Time) (the "<u>Interim Expiration Date</u>"); *provided, however, that*, nothing in this Interim Order shall be deemed a waiver of the Debtors' right to seek additional use of Cash Collateral or the Lender's right to oppose such request.

12.     Pursuant to sections 361, 362, and 363 of the Bankruptcy Code, as adequate protection for any post-petition diminution in the value of the Lender's interests in the Prepetition Collateral, including, without limitation, such diminutions as may be caused by the imposition of the automatic stay of section 362(a) of the Bankruptcy Code and by the Debtors' use of the Prepetition Collateral and/or Cash Collateral, the Debtors (i) are hereby authorized to and do hereby grant to the Lender, a valid, binding, enforceable and automatically perfected lien, and/or security interest (collectively, "<u>Liens</u>," and as so granted to the Lender the "<u>Replacement Lien</u>") in all of the Debtors' presently owned or hereafter acquired property and assets, (collectively, to the extent acquired after the Petition Date, the "<u>Post-Petition Collateral</u>" and together with the Prepetition Collateral and the Cash Collateral, the "<u>Collateral</u>").

13.     Notwithstanding the foregoing, the Replacement Lien shall be subject to liens and other interests in property of the Debtors' estates existing as of the Petition Date that are both (i)

valid, enforceable and not subject to avoidance by any trustee under the Bankruptcy Code; and (ii) senior under applicable non-bankruptcy law to, or encumber assets not encumbered by, the Lender's liens in the Prepetition Collateral as of the Petition Date.

14.     The automatic stay provisions of section 362 are hereby modified to permit (a) the Debtors to implement and perform the terms of this Interim Order, and (b) the Debtors to create, and the Lender to perfect, the Replacement Lien.  The Lender shall not be required to file UCC financing statements or any other instruments with any other filing authority to perfect the Replacement Lien granted by this Interim Order or to take any other actions to perfect such liens, which shall be deemed automatically perfected by the docketing of this Interim Order by the Clerk of the Court.  If, however, the Lender shall elect for any reason to file, record, or serve any such financing statements or other documents with respect to such liens, then the Debtors shall execute the necessary documents upon request, and the filing, recording, or service thereof (as the case may be) shall be deemed to have been made at the time of the commencement of these Chapter 11 Cases on the Petition Date.

15.     Each of the following shall constitute an "Event of Default" for the purposes of this Interim Order:

- The Debtors' Chapter 11 Cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code;

- A chapter 11 trustee or examiner with expanded powers is appointed in the Debtors' Chapter 11 Cases;

- The Debtors collectively cease operations of their present businesses or take any material action for the purpose of effecting the foregoing without the prior written consent of the Lender, except to the extent contemplated by the Budget or otherwise approved by the Court;

- The Debtors expend any material amounts of funds or monies for any purpose other than those set forth in the Budget or as otherwise approved by the Court;

- The Debtors fail to comply with any of the terms of this Interim Order;

- The Debtors expend Cash Collateral in an amount in excess of ten percent (10%) in total disbursements over the period of the attached Budget, without the advance written consent of the Lender; or

- Except as may be authorized under this Court's Order or with prior written consent of the Lender, the Debtors transfer Collateral or Cash Collateral to any non-Debtor.

16.     Any non-compliance or default with any term of this Interim Order shall not be deemed an Event of Default, unless the Lender delivers written notice of such non-compliance or default to the Debtors' proposed counsel, at the following address:  Herrick, Feinstein LLP, Attn: Stephen B. Selbst, Steven B. Smith, and George V. Utlik, 2 Park Avenue, New York, New York 10016, and the non-compliance or default is not thereafter cured by the Debtors within five (5) business days after counsel's receipt of such written notice.  Upon the occurrence of any Event of Default, the Lender may move before this Court, on five days' notice to the Debtors, to terminate the Debtors' use of Cash Collateral.

17.     From and after the date of this Interim Order and pending the Final Hearing and/or entry of any subsequent order, the Cash Collateral, shall not, directly or indirectly, be used to pay administrative expenses of the Debtors and their estates except for those operating expenses (including the statutory fees of the United States Trustee pursuant to 11 U.S.C. §1930) that are set forth in the Interim Budget or with the written consent of the Lender.

18.     Notwithstanding any provision of this Interim Order to the contrary, (i) the Cash Collateral may be used for the following Carve-Out: (a) any fees of the Clerk of the Court and the U.S. Trustee required to be paid pursuant to 28 U.S.C. § 1930; (b) any unpaid fees and expenses of professionals of the Debtors and an official committee of unsecured creditors (if appointed) retained by an order of the Court pursuant to section 327, 328 or 363 of the Bankruptcy Code (the "Professionals"), to the extent such fees and expenses are (i) allowed by the Court under sections 330, 331, or 363 of the Bankruptcy Code, and (ii) not otherwise paid

after exhaustion of retainers or any professional expense escrow account established by the Debtors and not otherwise paid during these Chapter 11 Cases; and (c) any reasonable fees and expenses of any chapter 7 trustee that may be appointed and any chapter 7 trustee's professionals.

19.     Notwithstanding any provision of this Interim Order to the contrary, claims or causes of action arising under sections 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code and the proceeds thereof ("Avoidance Actions") shall not constitute the Collateral of the Lender.

20.     The terms and conditions of this Interim Order shall be (i) effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding any potential application of Bankruptcy Rules 6004(g), 7062, 9014 or otherwise; and (ii) not be stayed absent (a) an application by a party in interest for such stay in conformance with Bankruptcy Rule 8005 and applicable Local Rules, and (b) a hearing upon notice to the Notice Parties, the Lender, the Office of the United States Trustee, and the Debtors' counsel.

21.     The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or the appointment of a chapter 11 trustee, subject to the provisions of the Bankruptcy Code.

22.     The terms and provisions of this Interim Order, as well as the Replacement Lien and all other claims and liens granted by this Order, shall: (a) continue in these Chapter 11 Cases or any superseding cases under the Bankruptcy Code; (b) be valid and binding upon, and inure to the benefit of, the Lender, the Debtors, and their respective successors and assigns, and all parties in interest, including, without any limitation, any official committee appointed in these

Chapter 11 Cases, chapter 11 trustee, chapter 7 trustee, responsible officer, examiner, estate administrator, or representative, or similar person appointed for the Debtors under any chapter of the Bankruptcy Code; and (c) continue, notwithstanding any dismissal of the Debtors' Chapter 11 Cases (and any such order of dismissal shall so provide), and such claims and liens shall maintain their priority as provided by this Interim Order until the Lender's Obligations are satisfied in full.

23.      The provisions of this Interim Order and the Debtor's right to use Cash Collateral shall expire on April ___, 2020. unless extended by further order of this Court or by written consent of the parties "So Ordered" by the Court.

24.      The Debtors are directed to serve a copy of this Interim Order on the Office of the United States Trustee, the Notice Parties, counsel for the Lender, and all parties filing a notice of appearance, by facsimile, e-mail or regular mail, on or before _____, 2020.

25.      The Final Hearing shall take place before this Court on April __, 2020 at __:__ _.m.

26.      Objections or responses, if any, to the proposed Final Order shall be in writing, filed on the Court's electronic Docket, and served upon the Notice Parties, including (i) the proposed attorneys for the Debtors, Herrick, Feinstein LLP, 2 Park Avenue, New York, New York 10016 (Attn: Steven B. Selbst, Esq., Steven B. Smith, Esq., and George V. Utlik, Esq.); (ii) the Office of the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Nazar Khodorovsky, Esq. and Reema Lateef, Esq.); (iii) the Lender, Flushing Bank, 99 Park Ave., Ste 820, New York NY 10016, and its counsel, Certilman Balin Adler & Hyman LLP, Attn: Richard J. McCord, Esq., 90 Merrick Avenue, East Meadow, New York 11554; as well as all parties appearing in these Chapter 11 Cases, and the Clerk of this Court

(marked "Chambers Copy") as to be received no later than 4:00 p.m. (Prevailing Eastern Time)

on April ___, 2020.

Dated:  March ____, 2020
        Brooklyn, New York

 

_____
UNITED STATES BANKRUPTCY JUDGE